WISCONSIN REPORTS. 631

June Term,
1853.

Rogan
vs.
Walker et al.

## PATRICK ROGAN,

### *vs.*

## MARTIN O. WALKER, ELLIS BAKER & JAMES ROGAN.

The interference of a court of equity, to relieve a party from the consequences of his own default, depends upon sound discretion based upon the circumstances of the case. There is no positive and precise rule on the subject.

Whether a court will interfere to relieve a party from his own default, may depend upon the question, on which side the greatest inconvenience will lie.

Whether in any case, after a cause has passed to a final decree in the Circuit Court, and on appeal a final decree has been pronounced in this court, an application of a defendant to open the decree, remove his default, and let him in to defend? *quære?*

It is in the power of a court of equity to open a default, and let in the defendant to answer, when he has a meritorious defence, and has been deprived of a hearing, through fraud, surprise, accident, mistake, or the negligence of his solicitor. But can this be done, even for such cause, after the case has passed to a final decree in the appellate court? But it is well settled that neither negligence nor laches may be imputed to the party in default.

When the ground of the application is accident, it must be an accident of such a nature as could not have been prevented by the ordinary care or diligence of a prudent man in the conduct of his ordinary business.

The court will not interfere to relieve a party from the consequences of his default, when such default is attributable to his own negligence or laches.

As will be seen by the preceding reports, that this case was brought to this court from the Circuit Court of Iowa county by appeal from the final decree of that court; that at the June term the cause was heard on appeal and a final decree rendered.

Now, at this December term, the defendant James Rogan, comes into court and files his petition, setting forth in substance; that he was duly made a party defendant, and was served with process; and was ruled to answer therein; that within the time in

which he was required to answer, he retained Samuel Baird, Esq., a solicitor of the court, then of Water town, but about removing to Racine, to appear, answer for, and conduct the defence of the petitioner; that on the 22d day of January, being at Racine, on his way to California, the petitioner had drawn up his answer by his said solicitor, who then resided at that place, which answer was subscribed and sworn to, and left with the said Baird, to be filed, and immediately thereafter he left the State, for California; that a day or two after signing the answer at Racine, being on his way to California, he stopped at Chicago, when he had an interview with Martin O. Walker, and told him he had prepared his answer and left it with his solicitor at Racine; whereupon Walker told him he would see his solicitor and get the answer and have it filed in the Circuit Court, where the cause was pending, by his, Walker's attorney, as a matter of convenience to him, the petitioner, to which he assented; that immediately afterwards he, the petitioner, proceeded to California, and remained away, and out of the State, until about the 8th of August last; that during his absence he heard nothing from his solicitor, and the only information he received relative to the suit was in a letter from Walker, stating that the complainant had succeeded in staving off the cause, and God only knew when it would be heard and disposed of; that during all the time he believed his answer had been filed, and his rights properly taken care of; that soon after his return he instituted inquiries in regard to the progress of the suit, and learned that by accident or mistake of some kind, his answer had not been filed; that as to him, the said bill had been taken as confessed; that he did not as-

certain these facts until after the hearing in this court, and the decree entered ; that he has equities in the case ; that for want of an appearance and filing of his answer, great injustice has been done him, and he is informed, by counsel, that he is without remedy, if the decree pronounced in this court is allowed to stand ; that he is advised, by counsel, that his answer, so prepared, as aforesaid, a copy of which is filed with the petition, is a good defence ; that he verily believes he can prove the matters alleged therein, and that the same are true, in substance and in fact ; that it was *bona fide* his intention and expectation that his answer would be filed, and his rights and equities protected and saved.

The prayer is, that the decree in this court be vacated; that the decree of the Circuit Court be reversed *pro forma* ; that the default of the petitioner in the Circuit Court be vacated and set aside, and the petitioner be permitted to file his answer, and defend &c.

The petition is duly verified, and in support of it is annexed the affidavit of Samuel Baird, Esq., in substance, as follows : That soon after the filing of the bill, he was retained by James Rogan, to appear and defend him in the cause ; that he " drafted" an answer, a copy of which is annexed to the petition ; that on the 22d day of January, 1850, the petitioner called on him at Racine, and that the answer was there sworn to ; that Rogan then informed him, that he was on his way to California, and should not be here to give his personal attendance to the suit, but that there was an understanding between him and Martin O. Walker, that A. Hyatt Smith, who was counsel for Walker, would attend the hearing before the Circuit Court, for both of them ; that if it was decided that the peti-

42

tioner had a right to redeem the premises in controversy, that Walker would assist him in his defence ; that Mr. Baird then informed the petitioner, the place of hearing was so distant, he could not attend at the hearing, and that he should send the answer to Mr. A. H. Smith, for him to file, and that it was understood between the petitioner and Baird that this should be done ; that soon after, he received the following telegraphic despatch from Chicago :

" Will you meet me at Janesville, to-morrow or next day, with Rogan's bill, or send the answer to Smith. Answer at Janesville."

That he immediately answered that he could not meet Walker at Janesville, but would send the answer by mail ; that he did send the answer to Smith, and requested him to file the same ; that he believes said Smith was counsel for Walker ; that the answer reached him in time to file the same before default was entered, and he believed he would file the same.

Accompanying the motion was filed a copy of the answer proposed to be filed, and which had been prepared as alleged in the petition.

The complainant also filed, and read upon the hearing, his own affidavit denying the matters set up in the answer, and also transcripts of the record from the late Supreme Court of the Territory of Wisconsin, showing or tending to show that the petitioner, in 1842, was declared a bankrupt on his own application, and that all his property had passed to assignees for the benefit of his creditors.

*A. L. Collins,* for the petitioner ; as to the power and practice of a court of equity to set aside a decree on default, &c., cited *U. S. Dig. Tit. Decree, Div.*

12, (*b.*) *Wells vs. Cruger*, 5 *Paige*, 164 ; *Hunt vs. Wallis*, 6 *id.* 371 ; 7 *id.* 350 ; *id.* 509 ; 8 *id.* 176 ; 3 *John. Ch. R.* 415.

There is no precise rule governing the interference of the court, to relieve a party from the consequences of his default It is a matter of discretion with the court. *Adams' Eq.* 701 ; *C. & P.* 361 ; 10 *Ves.* 30 ; 1 *Barb. Ch. R.* 368 ; 1 *Mad. Ch. Ch.* 2, § 2, *p.* 41 ; *Jeremy's Eq. Ch.* 1, *p.* 389 ; 9 *Ves.* 466 ; 1 *Madd. Rep.* 189 *to* 193 ; *Story's Eq.* § 79.

*A. Finch, Jr.*, for the complainant, and opposed to the motion contended :

That to open a default and let in a defence is discretionary, depending upon the circumstances of each particular case. 1 *Bard. Ch. Pr.* 267 ; *Wells vs. Cruger*, 5 *Paige*, 165.

The party moving to vacate a decree, must show a sufficient excuse for his default, such as will strongly commend itself to the favorable consideration of the court, and which is not inconsistent with the degree of diligence required in all courts of equity.

To entitle a party to have a decree opened after enrolment, (or engrossment, under our statute,) he must show the default to have been occasioned by a train of circumstances unavoidable in their character. *Beekman vs. Peck*, 3 *Johns. Ch. R.* 414 ; *Baxter vs. Lansing*, 7 *Paige*, 352.

The only general grounds upon which courts of equity will entertain a motion or petition to vacate a decree after enrolment, are : 1. Surprise. 2. Mistake. 3. Accident. 4. Negligence of solicitor. 1 *Barb. Ch. Pr.* 368.

Applying these general rules to this case, it is ap-

parent that the petition should be denied. It is not a case of surprise. The facts disclosed in the petition do not meet the legal definition of that term. *Barb. Ch. Pr.* 368, *and references.* Nor is it a case of mistake, such as the law recognizes. 1 *Burr'l. Law Dic.* 721; 1 *Story's Eq. Jur.* 110, *et seq.*: nor of accident. 1 *Burr'l. Law Dic.* 17; *Story's Eq.* § 78.

Nor is there any negligence of the solicitor. Baird's relation as solicitor had ceased with the sending the answer to Smith. The petitioner had not retained Smith for any purpose. His arrangement was with Walker "for convenience."

But this answer, by the "arrangement" was not to be filed in any event, until the right of redemption was decided upon; that is, until the merits of the suit were determined.

Again, the case made by the petition and affidavit of Baird, shows fraud and collusion between the petitioner and Walker, as will appear from the following facts and circumstances. 1. From the delay in preparing the answer. The record shows that service was made May 11, 1849; order to answer 20th September; expired 12th November, 1849, and the answer was not made and signed until 22d January, 1850. No effort to answer until he was on his way to California. 2. The answer was left under the control of Walker, whose interests in the subject matter of the suit were hostile. 3. The answer was only to be filed by Walker, in case the question of redemption was decided against him. 4. The collusion is apparent also from the fact, that the arrangement was made with Walker before the answer was prepared.

But if the story of the petitioner is true, it discloses a case of the grossest negligence, if not fraud and col-

lusion, and in such case the court will not interfere. 7 *Blackf.* 54 ; 16 *Wend.* 384 ; 25 *id.* 249.

The proceedings in bankruptcy, exhibited by the transcripts, show that the petitioner has no title, and his answer could not avail him. All his property passed to assignees on his being declared a bankrupt.

This court has no power to entertain this petition. This court has appellate jurisdiction only. If it opens the decree, it cannot hear the defendant on the merits of his answer. That would be original jurisdiction. Nor can this court send the case back to be so heard. It can only remand on appeal. This is not such a case. The petitioner has not appealed. He is not in this court. *R. S.* 428 ; *Story's Eq. Pl. p.* 453, § 408; 16 *Wend.* 381 ; 25 *id.* 249 ; 3 *Danl. Ch. Pr.* 1617.

The defence shown by the answer is inconsistent with the case of petitioners co-defendant. His only remedy, therefore, would have been to file a cross bill. 3 *Danl. Ch. Pr.* 1805 ; *Monroe*, 378.

*By the Court*, SMITH, J. At the last term of this court, we found this cause pending here, on appeal from the Circuit Court of Iowa county. In the manner made fully apparent by the record of the case, on such appeal, the matters then in controversy were fully considered and determined by this court, and a final decree entered therein. During this term, that decree was sought to be set aside by the defendant Walker, on motion made for that purpose ; which motion has been fully considered and decided.

Now, however, at a later day, the defendant James Rogan appears (for the first time in the progress of the cause) in this court, and files his petition, praying that the final decree made by this court on the hear-

*JUNE TERM, 1853.*

Rogan
vs.
Walker et al.

ing of the cause on appeal, may be vacated, and that the decree of the Circuit Court heretofore made, may be reversed, *pro forma;* that the petitioner's default entered in the cause by the Circuit Court for failing to appear and answer, may be set aside ; that the petitioner may be permitted to file his answer, the cause be remanded to the Circuit Court, and that the Circuit Court proceed to adjudicate upon such answer the same as though it had been filed in due time.

The reasons on which the petition is based, are set forth in the petition duly verified, and in the affidavit of Samuel Baird, Esq.; from which it appears that the petitioner was duly served with process from the court below ; was ordered to answer in due form; that before his default was entered, or a decree, *pro confesso*, taken against him, but after the expiration of the order to answer, he retained Mr. Baird in the cause, and employed him to draw up his answer, which was done, and sworn to by the petitioner ; that this answer was drawn up at Racine, on the 22d day of January, 1850, where the petitioner then was, on his way to California. The petitioner states that he left the answer with Mr. Baird, to be filed in the cause ; that a day or two afterwards he had an interview with Martin O. Walker, the other defendant, at Chicago, Ill., in which he informed Walker that he had prepared his answer and left it with his said solicitor. That Walker told him that he would see the solicitor and get the answer from him, and have it filed in the said La Fayette (Iowa) Circuit Court, by his (Walker's) attorney, as a matter of convenience to him, to which he assented.

Mr. Baird, in his affidavit, states that James Rogan, the petitioner, called on him, at Racine, on the 22d

day of January, 1850; that his answer was then and there drawn up, and was sworn to by Rogan; that Rogan then informed him that he was on his way to California, and should not be able to give his personal attention to the suit, but that there was an understanding between him and Martin O. Walker, that A. Hyatt Smith, who was Walker's counsel in the suit, would attend the hearing of said cause, and if it was decided that he, Rogan, had a right to redeem the premises, that he, Walker, would assist him in his defence. That Baird then informed Rogan that, as the circuit was so far from his residence, he could not be present at the hearing, but he should send the answer to Mr. Smith to be filed, and it was understood between them that it should be so done. That a short time after, he received a telegraphic dispatch from Walker, requesting him to meet him at Janesville, with James Rogan's answer; that he replied that he could not meet him at Janesville, but would send the answer to Mr. Smith; and that he thinks he sent the answer to Mr. Smith in time to be filed before Rogan's default was entered.

We have here given a synopsis of the matters set forth in the petition sworn to by the petitioner, and the facts set forth in the affidavit of Mr. Baird, because, upon the facts thus established must our judgment be based. These facts must be clearly ascertained, before the law and the practice of the court can be applied to them.

What, then, are the facts established by the petition, and the affidavit of Mr. Baird? The petition states that the petitioner retained Mr. Baird, within the time in which he was required to answer, to attend to and defend the cause on his behalf; that the said so-

licitor was then about to remove to the village of Racine; that on the 22d of January, 1850, when on his way to California, he called on the said solicitor, then residing in Racine, and procured his answer to be drawn, there swore to it, and left it with the said solicitor to be filed; and that, proceeding on his way to California, he had at Chicago an interview with Martin O. Walker, and then and there arranged with him to have Walker get the answer, thus prepared and sworn to, from Rogan's solicitor, and procure it to be filed by his (Walker's) solicitor or counsel. James Rogan states this arrangement with Walker to have been some few days after the drawing up of his answer by Mr. Baird on the 22d day of January, at Racine; and it would seem that the interview with Walker at Chicago was accidental, as the petitioner was *en route* for California, and that the arrangement was made as a matter of convenience to the petitioner; if not suggested by the exigencies of the occasion, at least adopted in the excitement incident to the enterprise before him; and that, in the confusion or hurry of the moment, he may have placed too much reliance upon his co-defendant, and too little upon his retained solicitor. But, unfortunately for this theory, Mr. Baird, in his affidavit, tells quite a different story. From his affidavit it appears, that on the same 22d day of January, the very day on which the petitioner's answer was drawn and sworn to, and before he had reached Chicago, and before he had had that interview with Walker, the petitioner told his solicitor, Mr. Baird, that he had an arrangement with Walker in regard to the institution and provisional defence of the suit on his behalf. That, by such arrangement, the counsel of Walker was to attend at the hearing

of the cause, and if it should be decided that the petitioner had a right to redeem the premises, (the right of redemption of the premises being the very thing and the only thing that Walker was contesting or intending to contest,) then, in such event, he, Walker, would assist him in his defence ; and it was then and there, on the same day, and before the alleged casual interview with Walker, understood and agreed, that the answer of the petitioner should be sent to Walker's counsel to be filed, and Mr. Baird was then, by the explicit understanding and arrangement of the petitioner, released and absolved from all further charge or responsibility in the cause, except merely to send the answer to Walker's counsel, which he accordingly did.

The facts stated by Mr. Baird in his affidavit, it will be seen, are utterly inconsistent with the story of the petitioner, and discordant with the equity sought to be established by it.

Nor does the petition, or the affidavit of Mr. Baird, intimate in the remotest degree, that James Rogan ever retained, or sought to retain the solicitor or counsel of Mr. Walker, or that such solicitor or counsel was ever under the slightest obligation of any kind to attend to the interest of James Rogan in the suit. On the contrary, on the face of the record, it appears, that the interests of Walker and James Rogan, in the subject matter of the suit, were hostile, and could be made to coincide only in the single aim to defeat the complainant's right of recovery against Walker, without regard to the settlement of the rights of any or either of the defendants. The defendant, Walker, might hope to prevail, if the equity of his own defence should be found wanting, by setting up an equity

43

in his co-defendant James Rogan, superior to that of the complainant. But the establishment of the equity of James Rogan was as fatal to the interest of the defendant Walker, as was that of the complainant. Supposing his own defence to fail, he might have a choice by whom he should be finally defeated. Upon no other hypothesis can this arrangement be accounted for, between Walker and the petitioner, by which the former should aid the latter in his defence, provided the right of the latter to redeem should be determined by the court. To this end, the possession of the sworn answer of James Rogan might be useful, and it might be worth while to borrow it for that purpose.

It further appears from the record in this court, that the bill was filed on the 11th day of April, 1849. A demurrer was filed by the defendant Walker, which was overruled by the Circuit Court, from which ruling an appeal was taken to the Supreme Court, the decree there affirmed, and the cause remanded, answer filed, testimony taken, final decree pronounced upon hearing, the cause then appealed again to this court, in which a final decree was pronounced, on the 29th day of September, 1853. It should also be remarked that the defendant Walker set up in his answer precisely the same facts, to defeat the right of recovery of the complainant, as the petitioner sets up in the answer which he proposes to file, and that he failed or neglected to produce evidence to sustain them.

These are the facts upon which the petition is founded, and which are relied on to move the court to a favorable consideration of the petition. We have purposely omitted in this place the counter affidavits and evidence produced by the complainant in resist-

ance of the petition, because we are prepared to base
our decision upon the case made by the petitioner
himself, and the record in the case.

We have been unable to find any precedent for a petition of this kind in a court of appellate jurisdiction only, though there are numerous instances in which such applications have been made to the court having original jurisdiction of the cause. The answer accompanying the petition cannot be filed, or its merits tried in this court. We can only look into the answer to ascertain whether it has merits or not. To let in the defence, we must vacate our own final decree; we must then arbitrarily reverse the decree of the court below, and send the cause back there, so that the petitioner may make his application to that court to let in his defence. It would be some relief to us if we could find some authority for this course of proceeding. It borders closely upon the assumption of original jurisdiction, so far as this petition is concerned. He never appeared in the court below; he made no defence; he did not join in the appeal. How then is he, or can he be before this court? Is the adjudication upon this petition of an appellate character? But waiving, for the time, all objection to the power of this court to grant the relief sought, and to the practice sought to be established by this proceeding, it will be admitted on all hands, that an application of this kind, asking so much, and involving such delay as it would necessarily occasion, should be of the strongest possible character.

The interference of a court of equity to relieve a party from the consequences of his own default, depends upon sound discretion arising out of the circumstances of the case. There is no positive and precise

June Term.
1853.

Walker et al.
ads.
Rogan.

rule on the subject. *Wooster vs. Woodhull*, 1 *Johns. Ch. R.*, 542.

Lord Hardwick, in *Cunningham vs. Cunningham*, *Amb.*, 89, said it was a question on which side the greatest inconvenience would lie. And Chancellor Kent refused to vacate a decree upon default, when the principal witness of the complainant had died subsequent to the decree. In *Beekman vs. Peck*, 3 *J. Ch. R.*, 415, the defendant was let in with his defence, his application showing that the delay in filing his answer arose from *unavoidable accident.* In *Knight vs. Young*, 2 *Ves. & Bea.*, Lord Eldon said : " With regard to the application to let in a party to answer, against whom a decree *pro confesso* has been obtained, the court has never done that, without a strong ground, being very tender of opening a decree of this sort." In *Millspaugh vs. McBride*, the chancellor admits the power of the court to open the decree and give the defendant an opportunity to make his defense, " where such defense is meritorious, and he has not been heard in relation thereto, either by mistake or accident, or by the negligence of his solicitor." 7 *Paige*, 512.

These authorities all show, that it is in the power of a court of equity to vacate a decree taken *pro confesso*, even after enrollment, where a defendant has been deprived of his defence, through surprise, mistake, accident, or the negligence of his solicitor. But it is equally well settled, that neither negligence or laches, may be imputed to the party in default.

The ground on which the petitioner bases his claim must be classed under the head of either accident or the negligence of his solicitor. There is no pretence for the latter ground. Mr. Baird's connec-

JUNE TERM, 1853.

Walker et al. ads. Rogan.

tion with the cause had ceased at the forwarding of the answer to Walker's counsel. The counsel of Walker was under no obligation to file the answer, or do any other service on behalf of the petitioner, for it does not appear that he had ever requested any service or aid at his hands.

It was admitted, on the argument, that the petitioner could claim relief upon the ground of accident alone. Whether or not, the accident must be of the kind denominated unavoidable, it certainly must be an accident of such a kind or nature, as would have been prevented by the ordinary care and diligence of a prudent man in the conduct of ordinary business.

The bill, in this case, was filed the 11th day of April, 1849. Personal service was had upon the petitioner, May 11, 1849. The order to answer was entered Sept. 20, 1849, and expired Nov. 12, 1849. The answer was sworn to on the 22d day of January, 1850, and left with Mr. Baird, as before stated. This is the only, and the last effort in the cause on the part of the petitioner, until the filing of this petition, Feb. 12, 1854. If a default had been entered at the expiration of the order to answer, and on the preparation of the answer in 1850, reasonable excuse for the delay had been shown, no doubt the court below would have admitted an equitable defence. But no step was taken by the petitioner to comply with the order of the court to answer, until he was on his way to California, in January, 1850. No excuse is shown for his non-compliance with the order of the court to answer within the time prescribed. And although a default, or decree, *pro confesso*, had not been entered at the expiration of the time, yet that does not tend to excuse his delay. He appears to have had ample

JUNE TERM,
1853.

Rogan
vs.
Walker et al.

time and opportunity to prepare and file his answer and provide for the conduct of his defence long before his departure.

But the arrangements which he made on the eve of his departure, show any thing but a *bona fide* desire and intention to defend the suit on his own account and for his own benefit. They indicate rather an intention to postpone his rights to those of his co-defendant, Walker, and to lend his equities to Walker; provided those of the latter should fail. He voluntarily dispensed with the further services of his .own retained solicitor, and committed the management of his case to his co-defendant, whose sole chance of success depended upon defeating the right of redemption in the complainant and the petitioner.

According to the affidavit of Mr. Baird, these arrangements with Walker were made even before the answer was drawn by Baird, and by them it was understood that the defence of the petitioner was only to be prosecuted, in the event of the failure of Walker's defence ; that is, upon the event of a decision by the court that the right of redemption existed. Then Walker was to *assist* him in the defence. But he had made no provision for the conduct of his defence to this point of litigation. Suppose his answer had been filed before any decree *pro confesso* had been taken against him ; as most of the matters contained in his answer are in avoidance, and not responsive to the bill, they would have required proof, in order to prevail. No one was retained or employed to procure this proof. The case would have gone on to the same result as did follow. And it is a significant fact, that Walker, in his answer, after the judgment of the Supreme Court on his demurrer, did set up precisely

June Term, 1853.

Walker et al.
ads.
Rogan.

the same matters of defence as those contained in the answer of the petitioner, but adduced no proof to establish them. The only reasonable construction to be put upon the facts here disclosed is, that it was arranged between Walker and the petitioner, that the latter should put his answer into the charge and use of the former, and that, in case the complainant should prosecute his bill to the judgment of the court in his favor, in regard to the existence of the equity of redemption, then Walker should interpose the petitioner's defence, to defeat the complainant's title. It seems too, that the petitioner rested upon this arrangement for more than four years. Nor is it any excuse that the petitioner was absent in California during most of this period. The course of justice cannot be interrupted, because a party chooses to absent himself from the jurisdiction. It is true, such circumstance will be considered, when a party shows that he has taken all the precaution, and used all the diligence in his power, to secure attention to his rights, and that precaution and diligence have failed, from causes beyond his control, and which could not have been prevented by reasonable diligence and foresight. If he had employed a regular solicitor, and furnished him with the means and matter of his defence, and the solicitor had died, or neglected his duty, or abandoned the case, or the like, a very different case would have been presented. But such is not the case. It is a reckless, if not wanton discharge of his solicitor, and an abandonment of his defence to the suggestions of policy by his co-defendant. He employs no one authorized to appear in court. What if Mr. Walker did promise to have his solicitor file the answer? Could the petitioner have supposed that the mere filing of his

answer was all that would be requisite on his part? Who was to prepare and take the testimony that might become necessary? Who was to attend upon all the various steps taken in a litigated cause in equity? No one. Who was to attend for him upon the final hearing? The only preparation which the petitioner avers in his petition, that he made on his departure, and even that on his journey, for he had discharged his solicitor, was with Mr. Walker in Chicago, and the extent of the preparation which he alleges is, that Walker would see Baird and get the answer and have it filed by his (Walker's) solicitor, as a matter of convenience to the petitioner. Here the arrangement for the defence ends, so far as the petitioner alleges. Can this court pronounce such conduct of a party reasonable diligence? and the failure of a defence, on such efforts, a failure from accident, such as commends itself to the favorable consideration of the court? Though Walker and James Rogan may have had a common interest to defeat the recovery of the complainant in this suit, yet the success of the defendant, Walker, upon the merits of the case, was as fatal to James Rogan as to the complainant, and he must have known it. His leaving his answer with Walker to be filed in the contingency mentioned in Baird's affidavit, was either gross negligence and recklessness, or culpable and designed collusion.

In any event we think the petition fails to state a case, which, according to all the authorities, would authorize the court below to open the decree were the cause still there.

We have not examined very critically the answer accompanying the petition, because our decision is not based upon the character of the defence which it dis-

closes. It is a general rule, that the answer, for the

purposes of the petition, must be taken to be true ; so far, at least, as to preclude its contradiction by counter affidavits.

On the hearing of the petition, the counsel for the complainant read the affidavit of the complainant contradicting the material allegations of the answers and further stating the fact that in 1842, subsequent to the acquiring of title by the defendant to the premises in question, the defendant had been declared a bankrupt, on his own petition, by the Supreme Court of the Territory of Wisconsin, sitting in Bankruptcy, under the authority of the laws of the United States, and that, all of the property of the said James Rogan, passed to his assignees, for the benefit of his creditors. Certain transcripts of the record of those proceedings, were also read, showing or tending to show the same facts.

Although these cannot be used for the purpose of contradicting the answer of the petitioner, yet inasmuch as he bases his right and title to the premises, and his whole defence, upon the title acquired from Walker, by his deed of 1839, we can scarcely shut our eyes to the fact, that in no event could the petitioner be permitted to acquire and hold the premises, to the exclusion of his creditors. Whatever right he had, legal or equitable, it was utterly gone, upon his being declared a bankrupt, and he can have no equity, but through some title subsequently acquired, which he does not allege.

If this be so, and we were permitted to look into the matter now, it would be still more apparent, that the only motive of the petitioner is, further to vex and harass the complainant. But as we have decided

44

this case upon other grounds, we make no further comment upon these facts.

We think all the parties in this case have had ample opportunity to be heard. The case has twice been carried to the Supreme Court, and all conceivable remedies have been put to the test, and we think that justice to all requires that we shall now declare to the parties, and of the subject matters of litigation in this case, that they remain *stare decisis*.

The prayer of the petition is denied with costs.